IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

KEVIN BUTTS,

        Plaintiff,

v.                                                 Civil Action No. 1:14-cv-67

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

        Defendant.

## REPORT AND RECOMMENDATION

### I. INTRODUCTION

**A. Background**

On April 14, 2014, Plaintiff Kevin Butts ("Butts" or "Plaintiff") filed this action for judicial review of an adverse decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his claims for disability insurance benefits ("DIB") under Title II of the Social Security Act. ECF No. 1. The Commissioner filed her answer on June 30, 2014. ECF No. 5. Plaintiff then filed his motion for summary judgement on July 28, 2014. ECF No. 9. The Commissioner filed her motion for summary judgement on August 27, 2014. ECF No. 10. The motions are now ripe for this Court's review and for this report and recommendation.

**B. The Pleadings**

    1.    Plaintiff's motion for summary judgement. ECF No. 9.

    2.    The Commissioner's motion for summary judgement. ECF No. 10.

**C. Recommendation**

I recommend that:

    1.    Plaintiff's motion for summary judgment be **DENIED** because substantial

evidence supports the ALJ's finding as to Dr. Anthony Owunna's medical opinion and the Residual Functional Capacity assessment.

2. The Commissioner's Motion for Summary Judgment be **GRANTED** for the reasons set forth.

## II. FACTS

### A. Procedural History

On September 9, 2010, Butts applied for DIB and supplemental security income ("SSI") alleging a disability beginning on November 12, 2008. R. 130-43. Butts's claims were initially denied on January 20, 2011, and upon reconsideration on April 26, 2011. R. 61-70, 72-85. Butts requested a hearing before an Administrative Law Judge ("ALJ"), and, on December 13, 2012, an ALJ hearing was held before Judge Stewart Goldstein. R. 86-7, 25-54. Butts, represented by counsel, testified at the hearing, as did a vocational expert ("VE"). *Id.* On January 30, 2013, ALJ Goldstein issued a partially favorable decision. R. 11-24. The ALJ found that "[b]ased on the application for a period of disability and [DIB] protectively filed on September 9, 2010, [Butts] was not disabled . . . through December 31, 2011, the date last insured." R. 24. However, the ALJ did find that Butts had "been disabled . . . beginning on November 11, 2012" and was eligible for SSI. *Id.* Butts appealed the ALJ's decision to the Appeals Council, which denied review on March 21, 2014. R. 1-4. Butts then timely brought his claim to this Court.

### B. Medical History

The following medical history is relevant to the issue of whether substantial evidence supports the ALJ's findings.

<u>1. Medical Treatments</u>

On November 17, 2008, Butts entered WVUH-East City Hospital ("City Hospital"), located

in Martinsburg, West Virginia, complaining of nausea, worsening cough, chest pain, and ear discomfort. R. 265. After an examination, Butts was "found to have respiratory failure with pneumonia" and was admitted into "the Intensive Care Unit for further care." R. 259, 266. The next day, Butts's "respiratory status deteriorated and he was intubated . . . ." R. 262. Butts was diagnosed with acute renal failure, respiratory acidosis, and hyperphosphateria. R. 263. On December 2, 2008, he was discharged from the hospital. R. 259-60.

On December 17, 2008, Butts was evaulated by Anthony Owunna, M.D. R. 215-19. Dr. Owuna noted that Butts "smokes and drinks alcohol heavily." R. 215. Since discharge from the hospital, Butts reported "feeling better" but still "off balance." *Id.* Dr. Owunna concluded that Butts's "[c]hest can be described as symmetric [and] [a]uscultation can be described as left upper rhonchi." R. 216. During the examination, Butts exhibited no cough and his respiratory effort was normal. *Id.* The next day, a x-ray was taken which revealed "[n]o radiographic evidence of pneumonia" but "[u]nderlying hyperinflation of the lungs." R. 227.

On June 22, 2010, Butts visited City Hospital complaining of pain radiating from his left groin to left back. R. 257. A CAT scan completed the same day revealed "[n]o acute findings" and "[n]o stones or hydronephrosis." R. 226.

On November 9, 2010, Butts underwent a pulmonary function test. R. 267-68. Phillip B. Aguila, M.D., noted that the test quality was poor due to Butts coughing throughout the test, but his bronchodilator response was "excellent." R. 267. The test revealed moderate obstructive airway disease in the peripheral airway. R. 268.

On November 17, 2010, Butts was evaluated by Dr. Owunna for shortness of breath. R. 319-20. Dr. Owunna found no cough and noted that respiratory effort wass normal, however, Dr.

Owunna diagnosed Butts with emphysema. *Id.*

On November 28, 2011, Butts was again evaluated by Dr. Owunna for shortness of breath. R. 349-51. Dr. Owunna noted that Butts's symptoms included dry cough, dyspnea, and wheezing. R. 349. Dr. Owunna reported that Butts's symptoms were aggravated by cold air exposure and mild and moderate activity, but Butts's symptoms were "relieved by use of beta agonist inhalers." *Id.* According to the report, Butts had "been off medications for a while" and was counseled to resume Albuterol, Symbicort, and steroids. R. 350.

On December 27, 2011, Butts was admitted to City Hospital for rectal bledding. R. 323. Butts had passed out and was brought to the emergency room. *Id.* An esophagogastroduodenoscopy was performed which revealed a large nonbleeding duodenal ulcer. *Id.* On December 29, 2011, Butts developed severe hypotension. *Id.* On the same day, a laparotomy, oversew of duodenal ulcer, and a Bogota bag closure were performed. R. 329. On January 12, 2012, Butts was discharged from City Hospital and instructed to follow up with doctors. R. 324.

On February 7, 2012, Butts returned to City Hospital for severe left lower quadrant abdominal pain. R. 333. Butts's principle diagnosis was acute diverticulitis with abscess formation, but was also diagnosed with peptic ulcer disease, right radial fracture, and history of prior alcohol abuse. *Id.* Butts was discharged on February 17, 2012, with no activity restrictions. R. 334. On March 12, 2012, Butts underwent a Hartmann procedure to prevent "a potentially toxic Clostridium difficile colitis." R. 337. During an examination by Dr. Owunna on March 20, 2012, Butts complained of pain and negative symptoms with taking Vicodin. R. 341.

On July 17, 2012, Butts was evaluated by Dr. Owunna for a follow-up for chronic obstructive pulmonary disease ("COPD") and colostomy. R. 375-77. Dr. Owunna noted that Butts was only

4

taking Symbicort because he lost his medical card and encountered financial problems filling his other medications. R. 375. Butts was given samples of Symbicort and Albuterol and a colostomy reversal was planned. R. 376. During an appointment with Dr. Owunna on July 31, 2012, Butts's COPD was noted as "stable" and his symptoms were found to be "aggravated by moderate activity and smoking" but "relieved by exposure to fresh air and use of beta agonist inhalers." R. 373.

2. Medical Assessments

On November 18, 2010, Seth Tuwiner, M.D., performed a disability determination examination for the West Virginia Disability Determination Service. R. 274-81. After the examination, Dr. Tuwiner diagnosed Butts with bilateral arm numbness, COPD/emphysema, arthralgias, illiteracy, a hearing impairment, and rectal bleeding. R. 277. Dr. Tuwiner concluded that Butts could do all activities of daily living and "[h]e can walk five minutes at a time." R. 275. Dr. Tuwiner further stated that Butts could be expected to stand and walk five hours in an eight hour work day and "has no limitation with sitting and does not require an assistive device." R. 277. During the examination, Dr. Tuwiner found no manipulative or postural limitations. *Id.* According to Dr. Tuwiner, Butts "was able to abduct and forward flex beyond 90 degrees" and "tie his shoes, exhibiting normal manual dexterity." *Id*. Additionally, Dr. Tuwiner noted that Butts could lift any weight frequently and occasionally without limitation. *Id.*

The next day, Butts was examined by Peter A. Johnson, M.D. R. 282-84. Dr. Johnson noted "chronic and down-sloping" hearing loss in both ears. R. 282. Dr. Johnson also described "chronic and constant" tinnitus. *Id.* Dr. Johnson found that "[h]earing aides should be helpful . . . ." R. 283.

On November 22, 2010, an adult mental profile was completed by Harold D. Slaughter, M.S., for the West Virginia Disability Determination Service. R. 285-89. Slaughter noted that Butts

was well groomed and cooperative throughout the evaluation. R. 285. Butts used an inhaler during the evaluation. R. 286. Slaughter noticed "significant hearing loss" and Butts stated that "he is deaf in his left ear and is supposed to have a hearing aid in the right ear." *Id.* During the evaluation, Slaughter performed a clinical interview, mental status examination, Wechsler Adult Intelligence Scale, and Wide Range Achievement Test. R. 285. At the conclusion of the evaluation, Slaughter diagnosed Butts with adjustment disorder with mixed anxiety and depressed mood and borderline intellectual functioning. R. 288. This assessment was based on Butts's statement about being "down in the dumps at times," anxiety about the future and finances, and intelligence test scores. R. 289. Slaughter concluded that "[w]ith appropriate medical treatment and mental health treatment, prognosis would be good for the depression/anxiety issues." *Id*.

On December 13, 2010, Frank Roman, Ed.D, completed a Psychiatric Review Technique and Mental Residual Functional Capacity Assessment ("Mental RFC"). R. 290-306. In his Psychiatric Review Technique, Dr. Roman concluded that Butts had a mild restriction of activities of daily living, moderate difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence, or pace, and no episodes of decompensation. R. 300. In Dr. Roman's Mental RFC, he concluded Butts was moderately limited in the following areas: the ability to understand and remember detailed instructions, the ability to carry out detailed instructions, the ability to maintain attention and concentration for extended periods, the ability to work in coordination with or proximity to others without being distracted by them, the ability to interact appropriately with the general public, and the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. R. 304-05. On April 21, 2011, Philip E. Comer, Ph.D., reviewed Dr. Roman's Mental RFC and affirmed the assessment as written. R. 318.

On January 14, 2011, Rogelio Lim, M.D., completed a Physical Residual Functional Capacity Assessment ("Physical RFC"). R. 308-16. Dr. Lim concluded that Butts could occasionally lift or carry twenty pounds and could frequently lift ten pounds. R. 309. As to standing and walking, Dr. Lim found that Butts could stand, walk, or sit for about six hours in an eight hours workday. *Id.* Dr. Lim, however, noted that Butts could only occasionally climb, balance, stoop, kneel, crouch, or crawl. R. 310. Lastly, Dr. Lim found that Butts should avoid concentrated exposure to extreme cold, vibration, fumes, odors, dust, gases, and poor ventilation, and avoid even moderate exposure to noise. R. 312. On April 12, 2011, Porfirio Pascasio, M.D., reviewed Dr. Lim's Physical RFC and affirmed the assessment as written. R. 317.

On July 31, 2012, Dr. Owunna completed a Physical Residual Functional Capacity Questionnaire ("Physical RFC Questionnaire"). R. 358-61. Dr. Owunna stated that he saw Butts every three months since 2007. R. 358. Dr. Owunna listed Butts's diagnoses as end state COPD, liver cirrhosis, duodenal ulcer, colostomy, and a right forearm fracture. *Id.* Dr. Owunna listed Butts's symptoms as fatigue, dizziness, polyarthralgia, and shortness of breath. *Id.* Dr. Owunna opined that Butts was incapable of performing even "low stress" jobs because Butts's pain interferes with his concentration. R. 359. As a result of Butts's impairments, Dr. Owunna concluded that Butts could not walk more than one city block, sit for more than one hour, or stand for more than thirty minutes. *Id.* Dr. Owunna stated that Butts could only sit, stand, or walk less than two hours in an eight hour workday. R. 360. Dr. Owunna noted that Butts, in order to work, must be able to walk for fifteen minutes every thirty minutes, shift from sitting to standing or walking at will, and take unscheduled breaks during an eight hour workday. *Id.* According to the Dr. Owunna's assessment, Butts could only occasionally lift anything less than ten pounds or twist. R. 360-61. Dr. Owunna also concluded

7

that Butts could only rarely lift ten pounds, stoop, or crouch. *Id.*

**C. Testimonial Evidence**

Testimony was taken at the ALJ hearing held on December 13, 2012. R. 25-54. The following portions of the testimony are relevant to the disposition of this case.

1. Butts's Testimony

Near the beginning of the hearing, the ALJ asked Butts a series of questions. Butts testified that, on the date of the hearing, was forty-eight years old, married, and had two adult children. R. 30. Butts does not have a driver's license and his wife or mother typically drive him around. R. 31. However, Butts testified that he does not "really go out of the house." *Id.* Butts stated that he only completed the sixth grade and "can read a little, and . . . write a little, but . . . can't spell that great." R. 31. He testified that he stopped working in November 2008 because of breathing problems. *Id.* During the hearing, Butts agreed with the ALJ's statement that, for fifteen years prior to November 2008, his "most significant work [had] been maintenance at [an] apartment complex, and . . . work as a custodian . . . ." R. 33.

Next, Butts testified about symptoms since 2008 that have prevented him from working. Butts testified that he has COPD and a colostomy bag. R. 33. Because of his COPD, he has shortness of breath which limits his ability to walk and move around his home. *Id.* Butts stated that his COPD has worsened since 2010. R. 34. Butts testified that he used two inhalers and takes OxyCotin and Percocet for pain. R. 35. Butts stated that the medications relieve his pain but cause drowsiness. R. 36. Butts testified that he smokes one pack of cigarettes and drinks roughly six to eight beers a day. *Id.* Butts testified that he is limited in how long he can stand in place and can only sit in his chair for forty to forty-five minutes before needing to stand. R. 38. Butts testified that, prior to March

8

2012, was not as limited in his ability to sit. R. 39.

During a typical day, Butts testified that he would wake up at 5:00 a.m. and watch television. *Id.* Butts stated that he will "lay on the couch and watch TV all day." *Id.* Butts alleged that he has not cooked since 2010 because he has difficulty using his hands. R. 41. Butts testified that he does not complete any domestic chores. R. 42 Since limiting his smoking from three packs to one pack a day, Butts testified that his breathing has improved "a little . . . but not much." R. 43.

Next, Butts's attorney began his examination. Butts stated that he was rejected from the military because of his hearing difficulties. *Id.* Butts testified that cold air makes his breathing worse and he uses an inhalers twice a day. R. 44. Butts agreed that his doctors and family have told him to stop drinking, but he continues to drink because "it helps to ease the pain." R. 47.

2. The Vocational Expert's Testimony

A VE also testified at the hearing. First, the VE summarized Butts's past jobs. The VE stated that Butts's work as a custodian was an unskilled position at a medium exertional level. R. 49. Butts's work as a maintenance worker was described as a semi-skilled position also at a medium exertional level. *Id.* Next, the ALJ asked the VE several hypothetical questions. The ALJ stated that in each hypothetical the VE should "assume an individual of [Butts's] age . . . his educational level he has a marginal sixth-grade education with an ability, but a limited ability to read and write. And he has the past work experience" previously described by the VE. *Id.* The first hypothetical asked the VE to assume

> that this individual can perform light work on an exertional basis, but with the following additional limitations. His ability to stand and walk would actually be limited to up to five hours in an eight-hour workday. He can occasionally climb ramps and stairs, and occasionally stoop, kneel, crouch, and crawl. He can frequently balance. He would need to avoid even moderate exposure to noise, and concentrated exposure to extreme cold, vibration, fumes, odors, dust, gases, and poor ventilation

> as well as hazards such as unprotected heights and moving or dangerous machinery. He is limited to performing simple, routine work with no more than occasional and superficial interaction with coworkers and the public. Could that hypothetical individual perform any of the past jobs you've described?

R. 49-50. The VE stated that the hypothetical individual would not be able to perform any of the past jobs previously described. R. 50. However, the VE testified that the hypothetical individual would be able to perform other work at the light exertional level or sedentary level. R. 50-51. The ALJ's second hypothetical question asked the VE to

> assume all the limitations I've described in my first hypothetical, except this individual would be limited to sedentary work, and would have one other additional limitation. He would need to take at least two unscheduled breaks a day in addition to normal breaks, with the breaks lasting approximately 20 minutes. Could that hypothetical individual perform any of the jobs you've described, or any other work?

R. 51. The VE testified that this hypothetical individual could not perform any work. *Id.*

During examination by Butts's counsel, the VE stated that employers require employees to stay on task for ninety percent of the time and "[m]ost employers will allow an individual to miss one to two days per month. If they miss more than that, the individual would lose their employment." R. 52.

### III. ALJ FINDINGS

In determining whether Butts was disabled, the ALJ followed the five-step sequential evaluation process set forth in 20 C.F.R. §§ 404.1520, 416.920. The first step in the process is determining whether a claimant is currently engaged in substantial gainful activity. §§ 404.1520(b), 416.920(b). If the claimant is not engaging in substantial gainful activity, then the second step requires the ALJ to determine whether the claimant has a medically determinable impairment that is severe or a combination of impairments that are severe. §§ 404.1520(c), 416.920(c). If the claimant has a severe impairment or combination of impairments, then the analysis moves to the

10

third step in the sequence, which requires the ALJ to determine whether the claimant's impairments or combination of impairments meets or equals any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"). §§ 404.1520(d), 416.920(d). If an impairment meets or equals a listed impairment, the claimant is disabled. *Id.* However, if the impairment does not meet or equal a listed impairment, the ALJ must determine the claimant's residual functional capacity ("RFC"), which is the claimant's ability to do physical and mental work activities on a sustained basis despite the limitations of his impairments. §§ 404.1520(e), 416.920(e). After determining the claimant's RFC, the ALJ must determine, at step four, whether the claimant has the RFC to perform the requirements of his past relevant work. §§ 404.1520(f), 416.920(f). If the claimant does not have the RFC to do his past relevant work, then he has established a *prima facie* case of disability, and the burden shifts to the Commissioner to demonstrate, at the final step in the process, that other work exists in significant numbers in the national economy that the claimant can do, given the claimant's RFC, age, education, and work experiences. §§ 404.1520(g), 416.920(g); *see also McLain v. Schweiker*, 715 F.2d 866, 868–69 (4th Cir.1983).

Here, as a preliminary matter, the ALJ determined that Butts met the insured status requirements of the Social Security Act through December 31, 2011. R. 17. At step one of the sequential process, the ALJ found that Butts had not engaged in substantial gainful activity since the alleged onset date of disability. *Id.* At step two, the ALJ found that Butts had the following severe impairments since November 12, 2008: COPD, bilateral sensorineural hearing loss, an adjustment disorder with anxiety and depression, borderline intellectual functioning, and a substance addiction disorder. The ALJ also found Butts had the following severe impairments since November 11, 2012: carcinoma of the lung with metastasis to the hilar lymph node, COPD, bilateral sensorineural

hearing loss, adjustment disorder with anxiety and depression, borderline intellectual functioning, and a substance addiction disorder. *Id.* At the third step, the ALJ found that none of Butts's impairments met or medically equaled the severity of any of the impairments contained in the Listings. R. 18. In order to consider step four of the process, the ALJ determined that prior to November 11, 2012, Butts had the RFC to perform light work except that the work is

> limited to standing/walking for no more than 5 hours in an 8-hour workday, and he should only occasionally climb ramps and stairs, stoop, kneel, courch, and crawl, and he can frequently balance. He should avoid even moderate exposure to noise and concentrated exposure to cold, vibration, fumes, odors, dusts, gases, and poor ventilation and workplace hazards, such as unprotected heights and moving or dangerous machinery. He is limited to simple routine work with no more than occasionally and superficial interaction with co-workers and the public.

R. 19. In determining Butts's RFC, the ALJ gave "some weight" to the medical evaluations of State agency consultants. R. 22. However, the ALJ added additional limitations based on Butts's subjective complaints, additional evidence in the record, and the examination conducted by Dr. Tuwiner. *Id.* The ALJ did not consider the medical limitations suggested by Dr. Owunna because "the limitations expressed in [his] opinion are extreme and inconsistent with [Butts's] course of treatment, and the objective findings in the record." *Id.* At step four, the ALJ found that Butts is unable to perform any past relevant work. R. 22. Finally, in step five, the ALJ found that, considering Butts's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that he could have performed prior to November 11, 2012. R. 22-23. Accordingly, the ALJ found that Butts was not disabled from September 9, 2010, through December 31, 2011, the date last insured, but was disabled beginning on November 11, 2012. R. 24.

### IV. MOTIONS FOR SUMMARY JUDGEMENT

**A. Contentions of the Parties**

Butts contends that the ALJ's partially favorable decision is based on legal error and not supported by substantial evidence. In support of his claim, Butts makes two arguments: (1) the ALJ's decision was incorrectly "based upon the wholesale acceptance of the opinions of state medical consultants and the rejection of the opinion of [Butts's] treating source" and (2) the ALJ "failed to credit several of [Butts's] severe impairments in assigning limitations to [Butts's] RFC that materially affected the availability of jobs which [Butts] can perform." ECF No. 9-2 at 14.

The Commissioner argues that substantial evidence supports the ALJ's medical evaluations and Butts's treating physician's opinions "were not consistent with the objective medical evidence or . . . treatment history for the relevant time period." ECF No. 11 at 13. The Commissioner also contends that substantial evidence supports that the "ALJ adequately accounted for" Butts's medical limitations in his RFC determination.

**B. The Standards**

<u>1. Summary Judgment</u>

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. The party seeking summary judgment bears the initial burden of showing the absence of any issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). All inferences must be viewed in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, "a party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but . . . must set

forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

2. Judicial Review

This Court's review of the ALJ's decision is limited to determining whether the decision is supported by "substantial evidence." 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence" is "more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). "Substantial evidence" is not a "large or considerable amount of evidence, but rather 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Pierce v. Underwood*, 487 U.S. 552, 664-65 (1988) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Richardson v. Perales*, 402 U.S. 389, 401 (1971). The decision before the Court is "not whether the Claimant is disabled, but whether the ALJ's finding of no disability is supported by substantial evidence." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (citing *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 2001)). The ALJ's decision must be upheld if it is supported by "substantial evidence." 42 U.S.C. §§ 405(g), 1383(c)(3).

**C. Discussion**

1. The "Treating Physician Rule"

Butts first argues that the ALJ erred in "accept[ing] the opinions of the DDS medical consultants regarding" Butts's RFC and "reject[ing] the [RFC] assessment of . . . Anthony Owunna, M.D." ECF No. 9-2 at 10. Butts contends that the ALJ failed to "perform[] any analysis under SSR 96-2p," and did not clarify why he did not give Dr. Owunna's medical opinion, as Butts's treating physician, great weight. *Id*.

14

In determining disability status, the ALJ must consider all medical opinions in the case record. 20 C.F.R. § 404.1527(b). ALJs evaluate and weigh medical opinions pursuant to the following non-exclusive list: (1) whether the physician has examined the applicant; (2) the treatment relationship between the physician and the applicant; (3) the supportability of the physician's opinion; (4) the consistency of the opinion with the record; and (5) whether the physician is a specialist. § 404.1527(c). "Courts often accord 'greater weight to the testimony of a treating physician' because the treating physician has necessarily examined the applicant and has a treatment relationship with the applicant." *Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005) (quoting *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001)). However, "although the treating physician rule generally requires a court to accord greater weight to the testimony of a treating physician, the rule does not require that the testimony be given controlling weight." *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992). Accordingly, "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996); see also *Evans v. Heckler*, 734 F.2d 1012, 1015 (4th Cir. 1984) ("The opinion of a claimant's treating physician is entitled to great weight and may be disregarded only if there is persuasive contradictory evidence.").

Ultimately, the Commissioner is "responsible for making the determination or decision about whether [a claimant] meet[s] the statutory definition of disability." 20 C.F.R. § 404.1527(d)(1). Nevertheless, an ALJ must provide "good reasons" for the weight given to a treating source's opinion. § 404.1527(d)(1). SSR 96-2 further provides:

> [T]he notice of the determination or decision must contain *specific reasons* for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be *sufficiently specific* to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion

15

and the reasons for that weight.

SSR 96-2P, 1996 WL 374188 (July 2, 1996).

In this case, Dr. Owunna is Butts's treating physician.[1] However, the ALJ rejected Dr. Owunna's opinion because "the limitations expressed . . . are extreme and inconsistent with the claimant's course of treatment, and the objective findings in the record." R. 22. In full, the ALJ noted that Dr. Owunna

> completed a medical source statement on July 31. 2012. He opined that the claimant was limited to sitting and standing/walking for less than 2 hours in an 8-hour workday. He indicated that the claimant required a job that permitted shifting between sitting, standing, and walking at will, and which allowed for unscheduled breaks lasting greater than 30 minutes, more than 5 times per day. He indicated that the claimant could only occasional1y lift less than 10 pounds and rarely lift 10 pounds

*Id.* In his decision, the ALJ noted instances where Dr. Owunna's opinion conflicted with other medical assessments. The ALJ discussed Dr. Tuwiner's finding that Butts could stand and walk five hours in an eight hour day, instead of two hours as alleged by Dr. Owunna. R. 21-22, 277. Additionally, the ALJ cited Dr. Lim's Physical RFC that found that Butts could frequently lift ten pounds and occasionally lift twenty pounds. R. 309. The same Physical RFC also found that Butts could stand, walk or sit about six hours in an eight hour workday. *Id.* Contrary to the Physical RFC, Dr. Owunna's opinion found that Butts could rarely lift ten pounds and, in order to work, must have a position that allows shifting positions from sittings, standing, or walking at will. R. 360.

Furthermore, beyond the medical opinions of Dr. Tuwiner and State agency consultants, the

---

[1] The Commissioner does not refute Butts's claim that "Dr. Owunna qualifies as a treating source . . . ." ECF No 9-2 at 11. Further, "a treating source," or treating physician, is defined as an "acceptable medical source who provides [a claimant], or has provided [a claimant], with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [a claimant]. 20 C.F.R. § 404.1502. The record in this case supports that Dr. Owunna is Butts's treating physician.

16

ALJ noted that Dr. Owunna's medical opinion was not supported by the "course of treatment, mild objective findings, [and] treatment gaps" found in the record. R. 22. Substantial evidence supports this finding. Significant gaps in medical treatment appear in the record. The record does not contain any significant medical treatment from December 2008 to June 2010 or from November 2010 to November 2011. R. 215-227, 257, 226, 267-68, 319-20, 349-51. Additionally, as addressed by the ALJ, the medical record supports that Butts did not properly take his medication, follow suggested courses of treatment, or abstain from smoking and drinking when ordered. R. 19-21. These findings tend to corroborate the ALJ's decision. *See Shannon v. Chater*, 54 F.3d 484, 486 (8th Cir. 1995) (While not dispositive, a failure to seek treatment may indicate the relative seriousness of a medical problem. Especially in cases such as this one where medical evidence is conflicting, a claimant's failure to seek treatment may buttress a particular physician's opinion."); *Hunter v. Sullivan*, 993 F.2d 31, 36 (4th Cir.1992) (failure to follow a prescribed treatment plan can undermine credibility); *Waters v. Colvin*, No. 4:12-CV-00023, 2013 WL 2490185, at *5 (W.D. Va. June 10, 2013) ("While plaintiff does suffer from COPD, there is substantial evidence to support the conclusion that it does not produce disabling limitations, and it is clear he has continued to be non-compliant with the recommendations of his treatment providers to stop smoking."). Therefore, based on the medical record, substantial evidence supports the ALJ's finding as the Dr. Owunna's medical opinion.

2. The ALJ's RFC Assessment

Butts next contends that the ALJ's RFC assessment is improper because he "failed to include . . . hearing loss and educational limitations which were supported by the medical record [and] acknowledged by state medical examiners." ECF No. 9-2 at 13. However, the ALJ's RFC did include limitations based on Butts's hearing loss and educational limitations. In his January 30,

2013, decision, the ALJ determined that Butts was able to perform light work, except he is limited to

> standing/walking for no more than 5 hours in an 8-hour workday, and he should only occasionally climb ramps and stairs, stoop, kneel, courch, and crawl, and he can frequently balance. *He should avoid even moderate exposure to noise* and concentrated exposure to cold, vibration, fumes, odors, dusts, gases, and poor ventilation and workplace hazards, such as unprotected heights and moving or dangerous machinery. *He is limited to simple routine work* with no more than occasionally and superficial interaction with co-workers and the public.

R. 19 (emphasis added). In creating the RFC, the ALJ cited Butts's hearing difficulties numerous times. R. 19-21.[2] The ALJ limited Butts to "even moderate exposure to noise . . . ." R. 19. Dr. Lim's Physical RFC made the same finding. R. 312. Thus, Butts's contention that the ALJ failed to include any limitation in the RFC as to his hearing loss is simply not accurate. Additionally, the ALJ adequately included Butts's educational limitations in the RFC. The ALJ noted multiple times that Butts only had a limited, sixth grade education. R. 19, 22. As stated above, the RFC limited Butts to only "simple routine work." R. 19. The ALJ's RFC limitation that Butts may only perform "simple routine work" is a sufficient accommodation of his deficient education. *Greathouse v. Comm'r of Soc. Sec.*, No. 5:12-CV-02425, 2014 WL 587374, at *12 (N.D. Ohio Feb. 14, 2014) ("The ALJ accounted for Plaintiff's "severely deficient education" when he limited Plaintiff to simple, routine tasks, with simple short instructions, simple work-related decisions, and few work place changes.); *Neely v. Colvin*, No. 2:12-CV-88-RJC-DSC, 2013 WL 5536791, at *9 (W.D.N.C. Oct. 7, 2013) ("The ALJ expressly accounted for Plaintiff's limited education in the assessed RFC by restricting her to performing simple, routine and repetitive tasks."). Therefore, Butts's hearing

---

[2] On one page alone, the ALJ mentioned that Butts "was diagnosed with . . . a hearing impairment," he "was diagnosed with unspecified sensorineural hearing loss," and "[h]e was noted to have hearing loss." R. 20.

and educational limitations are sufficiently addressed and substantial evidence supports the ALJ's RFC.

## V. RECOMMENDATION

For the reasons appearing above, the undersigned finds that the ALJ's decision was based on substantial evidence, and **RECOMMENDS THAT** Butts's motion for summary judgement, ECF No. 9, be **DENIED**, and the Commissioner's motion for summary judgment, ECF No. 10, be **GRANTED**.

Any party who appears *pro se* and any counsel of record, as applicable, may, within fourteen (14) days after being served with a copy of this Report and Recommendation, file with the Clerk of the Court written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection. A copy of such objections should be submitted to the District Court Judge of Record. Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Report and Recommendation. 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985): *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984), *cert. denied*, 467 U.S. 1208 (1984).

DATED: May 21, 2015 /s/ *James E. Seibert*
JAMES E. SEIBERT
UNITED STATES MAGISTRATE JUDGE